UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WILLIE LEE GIBBS,                        )
                                         )
                    Petitioner,          )
                                         )
        vs.                              )        Case No. 4:12CV1714 ACL
                                         )
CHRIS KOSTER,                            )
                                         )
                    Respondent.          )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Willie Lee Gibbs for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.

### I.  Procedural History

Gibbs is presently incarcerated at Butner Federal Correctional Institution in Butner, North

Carolina.   His federal sentence is set to expire this year; however, he is subject to a detainer by the

State of Missouri for the convictions related to his instant petition for writ of habeas corpus.

Thus, Chris Koster, the Missouri Attorney General, is the proper Respondent.

On August 28, 2007, the State charged Gibbs in the City of St. Louis with forcible rape,

two counts of armed criminal action, and first degree robbery, for actions that occurred on October

30, 2000.   (Respt's Ex. 2 at 16-18.)   At the time he was indicted, Gibbs was serving a fifteen-year

sentence in federal prison in Indiana.   Gibbs was brought to Missouri under the Interstate

Agreement on Detainers Act for his arraignment and his trial.   *Id.* at 20-28.   On August 5, 2009, a

jury found Gibbs guilty on all counts.   (Respt's Ex. 1 at 422.)   Gibbs was sentenced as a prior and

persistent offender and a persistent sexual offender to sixty years imprisonment, to run

concurrently with an unrelated twenty-seven-year sentence he had received in 2004.   (Respt's Ex.

2 at 81-85.)

Gibbs raised two claims on direct appeal. (Respt's Ex. 3 at 12-13.) In his first claim, Gibbs argued that the trial court erred in finding him to be a persistent sexual offender. *Id.* at 12. Gibbs next argued that the trial court erred in overruling his objection to the state's line of questioning in *voir dire* regarding the panel's ability to convict based on DNA evidence alone. *Id.* at 13. On June 22, 2010, the Missouri Court of Appeals for the Eastern District affirmed Gibbs's convictions. (Respt's Ex. 4.)

Gibbs filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. 6 at 3-8.) After the appointment of counsel, Gibbs filed an amended post-conviction relief motion and request for an evidentiary hearing. *Id.* at 14-38. In the amended motion, Gibbs raised the following ineffective assistance of counsel claims: (1) trial counsel failed to argue or amend Gibbs's motion to dismiss filed on May 11, 2009; and (2) trial counsel failed to object to improper personalization, request the jury to disregard the state's closing argument comment, and request a mistrial. *Id.* at 16-18. The motion court denied Gibbs's claims and his request for an evidentiary hearing. *Id.* at 39-45.

On appeal from the denial of post-conviction relief, Gibbs first argued that trial counsel was ineffective for failing to argue or amend his motion to dismiss filed on May 11, 2009, considering trial counsel continued Gibbs's case without his permission and admitted that she did not understand the Interstate Detainers Act. (Respt's Ex. 7 at 16.) Gibbs next argued that he received ineffective assistance of counsel in that trial counsel failed to object to improper personalization, request the jury to disregard the state's closing argument comment, and request a mistrial. *Id.* at 26. The Missouri Court of Appeals for the Eastern District affirmed the decision of the motion court. (Respt's Ex. 8.)

Gibbs timely filed the instant Petition on September 20, 2012. (Doc. 1.) Gibbs raises four grounds for relief: (1) the trial court erred in finding him to be a prior and persistent sexual

offender because the offense used by the state to support the contention occurred after the instant offense occurred; (2) the trial court erred in overruling his objection to the state's line of questioning when the state improperly sought to get a commitment from the jury to convict him based on DNA evidence alone; and (3) he received ineffective assistance of counsel because trial counsel did not argue or amend the motion to dismiss under the Interstate Detainers Act.

On November 27, 2012, Respondent filed a Response to Order to Show Cause, in which he argues that all of Gibbs's claims fail on their merits. (Doc. 7.)

## II. Facts[1]

Early in the morning of October 30, 2000, S.P., asleep in her bed with her daughter, woke to find a man standing over her bed. The man pulled S.P.'s hair and threatened to shoot her daughter if she screamed or moved. S.P. followed the man into her daughter's room where he took her jewelry and forced her to lay down on the carpet and have sex with him. The man ejaculated on S.P.'s legs and attempted to wipe it off. Before leaving, the man took more jewelry from S.P. and threatened to harm her if she told anyone. S.P. changed clothes and woke her daughter. S.P. went to a friend's house and called the police. Because there were no lights on in the house at the time of the attack, S.P. was not able to give a description of the man. She only knew that the man was black, wore a sweatshirt with a hood, was between 5'7 and 5'9, weighed 150-160 pounds and smelled of alcohol.

She then went to a hospital where a rape kit was performed. Sperm was found on the vaginal smear. Authorities later seized a piece of carpet from the daughter's bedroom. This carpeting, along with S.P.'s underwear, tested positive for seminal fluid. DNA testing was conducted on all three samples and entered into the Combined DNA Indexing System ("CODIS").

---

[1] The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal. (Respt's Ex. 4 at 2-3.)

In 2007, CODIS found a match between the samples and Defendant's DNA. The police compared the DNA in the samples from S.P. with DNA extracted from a buccal swab taken from Defendant. The seminal fluid from the carpet and underwear along with semen from the rape kit matched the Defendant's DNA.

Based on the DNA evidence, Gibbs was charged with forcible rape, robbery and two counts of armed criminal action for the attack on S.P. in 2000.

Trial began on August 3, 2009. The state asked the venire panel if they would require witness identification before coming to a verdict. Defense counsel objected that the state was attempting to obtain a commitment from the venirepersons. The trial court overruled the objection.

The trial court found Gibbs to be a prior and persistent offender based on two guilty pleas for felony burglary and felony robbery. The trial court also found Gibbs to be a persistent sexual offender based on an October 7, 2004 conviction for attempted forcible rape.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. §
2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.*

## IV. Petitioner's Claims

The undersigned will discuss Gibbs's three grounds for relief in turn.

## 1. Ground One

In his first ground for relief, Gibbs argues that the trial court erred in finding him to be a prior and persistent sexual offender because the offense used by the State to support the contention occurred after the instant offense occurred. Gibbs's claim rests on the proper interpretation of a Missouri statute, RSMo § 558.018.

Section 558.018 defines a persistent sexual offender as follows:

> 1. The court shall sentence a person who has pleaded guilty to or has been found guilty of the felony of forcible rape, statutory rape in the first degree, forcible sodomy, statutory sodomy in the first degree or an attempt to commit any of the crimes designated in this subsection to an extended term of imprisonment if it finds the defendant is a persistent sexual offender.

2.        A "persistent sexual offender" is one who has previously pleaded guilty to or has been found guilty of the felony of forcible rape, rape, statutory rape in the first degree, forcible sodomy, sodomy, statutory sodomy in the first degree or an attempt to commit any of the crimes designated in this subsection.

Respondent first argues that Gibbs's claim is not cognizable. The undersigned agrees.

Federal habeas relief is available only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Gibbs does not allege a violation of his constitutional rights or of federal law. Rather, Gibbs claims that the state court erred in applying state law.

Gibbs's claim is also meritless. Gibbs raised this claim in his direct appeal. The Missouri Court of Appeals found plain error did not occur. (Respt's Ex. 4 at 6.) The court noted that § 558.018 does not contain a provision requiring that the previous offense must have been committed prior to the date of the instant offense. *Id.* at 5. Instead, § 558.018 merely requires that the defendant "previously pleaded guilty to or has been found guilty" of the enumerated sexual offenses. *Id.* Gibbs was found guilty of attempted forcible rape in October of 2004, prior to being found guilty of the instant charge of forcible rape in August of 2009. Gibbs therefore qualified as a persistent sexual offender under the plain language of the statute.

The decision of the state appellate court is not contrary to or an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in state court. Accordingly, Gibbs's first ground for relief will be denied.

## 2. Ground Two

In his second ground for relief, Gibbs argues that the trial court erred in overruling his objection during *voir dire* because the state sought to get a commitment from the jury to convict based on DNA evidence alone. A review of the record shows that the prosecutor asked the venire panel a hypothetical question that was designed to determine whether the panel members would require the victim to be able to identify the defendant in order to reach a verdict, or if the presentation of DNA evidence would be sufficient for them to come to a decision.

The following occurred during voir dire:

[Prosecutor]: In this case the State is relying on DNA to prove identity. Okay. I anticipate the victim cannot identify the person who attacked her. We are relying on DNA. Is there anyone here in the jury box that would require the victim to be able to identify the defendant before coming to a verdict?

[Defense Counsel]: Objection. Your Honor, that's improper. Intending to get a commitment.

THE COURT: That will be overruled.

[Prosecutor]: And I'm going to try to go through this briefly, but because this is so important, I want to go through this one by one. Mr. Foster, are you okay with that DNA evidence?

VENIREMAN FOSTER: Yes.

[Prosecutor]: Ms. Thomas?

VENIREMAN THOMAS: Now you said that the DNA and her not identifying him?

[Prosecutor]: Right. Would you require she be the one to identify him? Or can you rely on other evidence such as DNA to come to a decision? Would you require her to be the one to do it?

VENIREMAN THOMAS: Well, it all depends how it happened. I mean to me—I mean, did she—was she covered, was her face covered, did she—

[Prosecutor]: Right. In my scenario, and I know it's kind of hard because you don't have a lot of facts in front of you.

VENIREMAN THOMAS: Right.

[Prosecutor]: It's kind of hard because I'm asking you to do something, you don't know what the facts are yet. But obviously sometimes people can disguise themselves, or time has passed. But what I'm asking you is are you going to require her to be able to identify him before coming to a verdict? In other words, before knowing anything, say you know what, I've already heard she can't do it, nope, that's not good enough, she has to be able to do it?

VENIREMAN THOMAS: Like I say, once again, I think I'd have to hear the whole argument, hear what was going on, for me to say yes, I think she should, I mean, you know, you know, identify him. Because for me to sit here and say okay, yeah, go on the DNA, and I don't know exactly—

[Prosecutor]: And I'm not asking you what your verdict would be just based on DNA. I'm asking you if you would absolutely require her to be the one to identify him. If you can't answer that now, that's okay. That's why I'm asking. In other words, are you gonna go back there—

THE COURT: [The prosecutor] is not asking for a commitment. You haven't heard any evidence. She's just asking you right now if you're going to require—now that you've been told that perhaps this victim cannot identify her assailant, if you've made a decision up-front that that's it.

[Prosecutor]: Does that help or not? If you're still not sure—

VENIREMAN THOMAS: I'm not sure.

[Defense counsel]: Your Honor—I'm sorry, [prosecutor]—may I just get a continuing objection to this whole line of questioning?

THE COURT: You may.

(Respt's Ex. 1 at 125-27.)

In his direct appeal, Gibbs argued that the trial court erred in overruling his objection to the state's line of questioning in *voir dire* regarding the panel's ability to convict based on DNA evidence alone, and that the court's ruling violated his constitutional rights to due process and a fair trial. The Missouri Court of Appeals held as follows, in relevant part:

The voir dire in this case is most similar to the voir dire in *State v. Dunn*. There, the prosecutor asked if DNA evidence, alone, could never be enough to prove the state's case. 7 S.W.3d at 432. The court found that the question tested the jurors' reservations about DNA evidence and, specifically, did not ask whether the jurors *would* convict only on the basis of DNA tests. *Id.* (emphasis in original). Here, the State was trying to determine

if the potential jurors had preconceived prejudices that victim identification was essential. The State specifically stated that it was not asking what their verdict would be based on DNA alone. Therefore, we find no abuse of discretion and no prejudice in the trial court overruling Defendant's objection that the State was attempting to extract a commitment from the venirepersons.

(Respt's Ex. 4 at 10.)

Voir dire is generally left to the sound discretion of the trial court. *See Morgan v. Illinois*, 504 U.S. 719, 729 (1992). The federal courts permit the use of hypothetical questions during voir dire as long as the hypothetical questions do not commit the jury to a decision in advance. *Hobbs v. Lockhart*, 791 F.2d 125, 129 (8th Cir. 1986). In *Hobbs*, the jurors were asked questions regarding whether they could convict Hobbs based on circumstantial evidence, but they were not asked to make a commitment to do so. *Id*.

The decision of the Missouri Court of Appeals in the instant case was not contrary to or an unreasonable application of clearly established federal law. The prosecutor specifically stated that she was "not asking [the venire panel] what your verdict would be just based on DNA." (Respt's Ex. 1 at 127.) The court then explained to the jury panel that the prosecutor "is not asking for a commitment," and that, rather, the state was seeking to determine if anyone on the panel had "made a decision up-front." *Id.* The prosecutor's line of questioning sought to determine if prospective jurors had preconceived views that victim identification was necessary. It in no way rendered the jury impartial. Thus, Gibbs's constitutional rights were not violated by the trial court's overruling of his objection during voir dire.

Accordingly, Gibbs's second ground for relief will be denied.

**3. Ground Three**

In his third and final ground for relief, Gibbs argues that he received ineffective assistance of counsel because trial counsel did not argue or amend his Motion to Dismiss under the Interstate Detainers Act.

9

The Interstate Agreement on Detainers Act ("IAD") "applies to prisoners incarcerated in another jurisdiction who have untried Missouri charges and are subject to detainers originating in Missouri." *State v. Vinson*, 182 S.W.3d 709, 711 (Mo. Ct. App. 2006). "The IAD 'is designed to encourage the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.'" *Lancaster v. Stubblefield*, 985 S.W.2d 854, 855 (Mo. Ct. App. 1998) (quoting *United States v. Mauro*, 436 U.S. 340, 343 (1978)). Articles III and IV of the IAD provide specific time periods within which disposition of charges must take place, depending on the circumstances. *See* RSMo § 217.490, Articles III, IV.

Gibbs filed a *pro se* "Motion to Dismiss for Violation of Statutory and Constitutional Right to Speedy Trial" on May 11, 2009. (Respt's Ex. 2 at 29-31.) The court docketed Gibbs's Motion as a Request for Speedy Trial. *Id.* at 6. On August 3, 2009, Gibbs's counsel filed a Motion to Dismiss for Violation of Interstate Agreement on Detainers Act, arguing that the state violated Gibbs's right to be brought to trial within 180 days pursuant to the IAD. *Id.* at 41-44. The trial court denied Gibbs's Motion to Dismiss, finding that any delay had been contributed to by multiple requests or continuances by Gibbs and that Gibbs was not prejudiced by any delay. *Id.* at 8.

In his post-conviction relief motion, Gibbs argued that trial counsel was ineffective for failing to argue or amend his Motion to Dismiss filed on May 11, 2009, considering trial counsel continued his case without his permission and admitted that she did not understand the IAD. (Respt's Ex. 6 at 16.) He stated that the Circuit Attorney's office filed a letter about lodging a detainer against him on March 19, 2008; and he therefore expected to be tried within 180 days of the detainer, or by September 2008. *Id.* Gibbs contended that, had counsel filed an amended motion to dismiss shortly after her entry of appearance on June 26, 2008 rather than continue the

case without his permission, the trial court would have found that it did not have jurisdiction to hear the case after December 23, 2008. *Id.* The motion court denied Gibbs's claim, holding that Gibbs did not allege the continuances sought by defense counsel were not reasonable, and the court could not assume a motion to dismiss would have been granted. *Id.* at 42. The court also noted that the time limit for bringing Gibbs to trial is not jurisdictional and may be waived. *Id.*

Gibbs raised the same claim on appeal from the denial of post-conviction relief. The Missouri Court of Appeals for the Eastern District held as follows:

> The applicable IAD provision is Article IV, addressing the time limit following a request for transfer by a state, which the State made in this case. Article IV states that the trial should commence within 120 days of the prisoner's arrival. [Gibbs] does not allege his arrival date in his motion, nor is it contained in the record. In any event, the first continuance occurred on the first hearing date in the case, July 24, 2008, 43 days after [Gibbs] was served with a warrant in Missouri.[2] [Gibbs] does not allege facts regarding the reasonableness of this continuance in his motion, nor does he allege that he or his counsel were not present during the court's ruling on this continuance. See Article IV, Section 3. Thus [Gibbs]'s motion did not allege facts entitling him to relief under Article IV, and the motion court did not clearly err in denying his motion without a hearing in this respect.
>
> [Gibbs]'s motion alleges only these additional facts: (1) his trial counsel obtained numerous continuances without his permission, and (2) his trial counsel admitted she did not understand the IAD. In determining whether the first entitled [Gibbs] to relief, we note that the time limits contained in the IAD are not jurisdictional and may be waived. See Sams v. State, 980 S.W.2d 294, 297 (Mo. banc 1998); Sackman v. State, 277 S.W.3d 304, 307-08 (Mo. App. E.D. 2009). The United States Supreme Court has held that in certain contexts waiver of the IAD time limits by defense counsel is sufficient without requiring direct waiver by the defendant. Hill, 528 U.S. at 115. The Court explained that a decision to "agree[] to a specified delay in trial," in order for defense to prepare, is one that "only counsel is in a position to assess" and that counsel is permitted to make without the defendant's permission. Id.
>
> Such was the case here. [Gibbs] has not alleged that his trial counsel was in fact prepared for trial, or even that his counsel's requests for continuances were unreasonable. He states only that she was ineffective for seeking continuances without his permission, which under these circumstances, was permissible for her to do in order to prepare. See Hill, 528 U.S. at 115. See also Sams, 980 S.W.2d at 296. [Gibbs] has not shown that a reasonably competent attorney would not have requested or agreed to the continuances

---

[2]While it is possible [Gibbs] arrived in Missouri before the date he was served with a warrant, it is not possible based on the record that [Gibbs] arrived more than 120 days prior to the first trial court continuance on July 24, 2008. [Footnote in original]

here, nor has he shown a probability that the result would have been different absent his counsel's agreements to continue the case.  See Sams, 980 S.W.2d at 296.

Further, [Gibbs]'s allegation that his trial counsel was ineffective because she was admittedly unfamiliar with the particulars of the IAD does not change our analysis.  Trial counsel's unfamiliarity with IAD only amounts to ineffectiveness when it produces unreasonable conduct.  See Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006) (movant must show "counsel's representation fell below an objective standard of reasonableness").  Her lack of knowledge regarding the IAD time limits alone does not make her requests for continuances themselves unreasonable.  See Sams, 980 S.W.2d at 297 (finding defense counsel's continuance not unreasonable regardless of whether counsel knew defendant had filed request for speedy trial under IAD Article III, triggering time limit).

[Gibbs]'s factual allegations that his trial counsel's performance was deficient are refuted by the record, and he raised no other allegations in his motion that entitled him to relief.  The motion court did not clearly err in denying [Gibbs]'s motion without an evidentiary hearing.  Point denied.

(Resp't's Ex. 8 at 7-8.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: Gibbs must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.  *Strickland*, 466 U.S. at 687.  To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold."  *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

The determination of the Missouri Court of Appeals is supported by facts and does not contravene or unreasonably apply clearly established federal law.  Gibbs has not demonstrated that defense counsel's motions for continuances were unreasonable.  Counsel was permitted to

request additional time to prepare for trial without asking for Gibbs's permission. In addition, Gibbs has not shown that the result would have been different had counsel not requested continuances.

Accordingly, Gibbs's third ground for relief will be denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Gibbs has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of September, 2015.